UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JARED E.[1] ,

    **Plaintiff,**

v.                        **Civil Action 2:23-CV-2370**
                                **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL
SECURITY,

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Jared E. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). This matter is before the Court on Plaintiff's Statement of Specific Errors (ECF No. 10); the Commissioner's Memorandum in Opposition (ECF No. 11); and the administrative record (ECF No. 7). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED**, and Plaintiff's Statement of Errors is **OVERRULED**.

### I.     BACKGROUND

Plaintiff protectively filed his DIB application on August 16, 2021, alleging that he became disabled June 30, 2020. (R. 190-96.) After Plaintiff's application was denied initially and

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

on reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on June 28, 2022, at which Plaintiff, who was represented by counsel, appeared and testified. (R. 37-73.) A Vocational Expert ("VE") also testified at the hearing. (*Id.*) On August 1, 2022, the ALJ issued an unfavorable determination (R. 15–31), and it became final after the Appeals Council declined review.

Plaintiff seeks judicial review of the ALJ's unfavorable determination. He asserts that the ALJ erred when assessing the opinion of state agency consultative examiner, Ricardo Romero, M.D. (Pl.'s Statement of Errors 11–14, ECF No. 10.) Plaintiff also appears to challenge the ALJ's subjective symptom assessment. (*Id*. at 15–17.) Defendant correctly asserts that Plaintiff's contentions of error lack merit. (Df.'s Memo. in Opp., 5–7, 10–14, ECF No. 11.)

## II. THE ALJ'S DECISION

The ALJ issued his decision on August 1, 2022. (R. 15–31.) The ALJ initially found that Plaintiff met the insured status requirements of the Social Security Act through December 31,

2025. (*Id.* at 17.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 30, 2020, his alleged disability onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis (MS) and a myoneural disorder. (*Id.*) The ALJ also found that Plaintiff had been diagnosed with anxiety disorder, a neurocognitive disorder and a substance addiction disorder, but they did not constitute severe impairments. (*Id.* at 18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he is limited to frequent fingering with the bilateral upper extremities. He is limited to no climbing of ladders, ropes, or scaffolds with occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. He is limited to no work at unprotected heights, moving mechanical parts, or operating a motor vehicle, and he is limited to occasional exposure to extreme cold and extreme heat.

(*Id.* at 21–22.)

Relying on the VE's testimony at step four, the ALJ determined that Plaintiff could perform his past relevant work as a technical support specialist or systems programmer. (*Id.* at 29.) Relying again on the VE's testimony, the ALJ also made an alternative finding at step five that jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and RFC could perform including such representative occupations as charge account clerk, bench assembler, and table worker. (*Id.* at 29–30.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act from June 30, 2020, through the date of the decision. (*Id.* at 31.)

### III.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.   ANALYSIS

As explained, Plaintiff clearly challenges that the ALJ erred when assessing medical opinion evidence. Plaintiff also apparently challenges the ALJ's subjective symptom assessment. These challenges are addressed in turn; both are found lacking in merit.

### A. The Medical Opinion Offered by Consultative Examiner Dr. Romero

Plaintiff contends that the opinion from Dr. Romero—that sedentary work would be difficult for him—was consistent with his symptoms, and that the ALJ provided no "logical bridge" for rejecting Dr. Romero's opinion. This contention of error lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. 20 C.F.R. § 404.1545(a)(1). The governing regulations describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical

5

evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). An ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. § 404.1520c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. § 404.1520c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

Dr. Romero examined Plaintiff on October 14, 2021. (R. 556–564.) In his examination report, Dr. Romero wrote that "[m]ost likely even a sedentary job would be difficult for [Plaintiff] at this time even though his strength is fine, physical labor probably would not be doable for him; in the past he has not been able to do any physical labor." (*Id.* at 559.) As a preliminary matter, such statements—that "most likely even a sedentary job would be difficult for [Plaintiff]" and that "physical labor probably would not be doable for him"—are not definitive

6

functional limits that the ALJ was required to include in Plaintiff's RFC. (*Id*. at 559.) First, an assessment of difficulty performing sedentary work does not constitute a definitive functional limit. *Jude v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-3579, 2022 WL 612152, (quoting *Mosley v. Berryhill*, No. 1:13-0055, 2017 WL 1153896, at * 10 (M.D. Tenn. Mar. 28, 2017) (explaining that an assessment of "difficulty" with an activity "does not constitute a definitive functional limitation that the ALJ was required to incorporate into the RFC"). *See also Murray v. Comm'r of Soc. Sec.*, Case No. 2:21-cv-2078, 2021 WL 6063289, at *7 (S.D. Ohio Dec. 22, 2021) (explaining that an elevated risk for dysfunction did not constitute a definitive functional limitation). In addition, Dr. Romero's uncertain language, including "most likely" and "probably," can reasonably be considered too speculative or equivocal. *See Earley v. Comm'r of Soc. Sec.*, Case No. 2:19-CV-53, 2020 WL 1080417, at *4 (S.D. Ohio Mar. 6, 2020) (explaining that "[a]n ALJ commits no error when disregarding speculative or ambiguous limitations that do not definitively mandate that a claimant cannot perform a specific task or operate in a particular manner.") Moreover, to the extent Dr. Romero opined that Plaintiff was unable to work, a statement about disability is a statement about an issue reserved to the Commissioner, and as such, it is not persuasive or entitled to analysis. *See* 20 C.F.R. 404.1520b(c)(3)(i).

In any event, the ALJ assessed Dr. Romero's statements and determined that they were only somewhat persuasive, writing as follows:

> The opinion of Dr. Ricardo Romero, the internal medicine consultative examiner, is somewhat persuasive (Exhibit 6F/5). Dr. Romero opined the claimant would have difficulty doing even a sedentary job "even though his strength is fine," and physical labor would probably not be doable for him (Exhibit 6F/5). The opinion of Dr. Romero is somewhat supported by and consistent with his examination, which demonstrated some slight reduction in strength and abnormal straight leg raising, but it was otherwise unremarkable, including with respect to gait, range of motion, sensation, and manipulative abilities, all of which support an ability to perform at least sedentary work activity (Exhibit 6F). The claimant acknowledged that he was able to sit for two hours at a time and carry up to twenty pounds, which is consistent with an ability to perform at least sedentary work, if not more (Exhibit 6F/2). Activities, including his ability to

7

> drive to appointments, attend to paperwork, moderate videogames, shop, and otherwise attend to his basic activities of daily living, as he reported to his psychological consultative examiner the next month, further support an ability to perform at least sedentary work activity (Exhibit 7F/3-4). Furthermore, examinations throughout the period under review were generally unremarkable despite some gaps in treatment, which further demonstrates an ability to perform at least sedentary work activity (Exhibits 1F-11F). Despite Dr. Romero's opinion, there is nothing in the record beyond the claimant's subjective complaints to suggest that he would have difficulty performing at least sedentary work activity, though that exertional limitation was adopted to give the claimant the full benefit of the doubt (Exhibits 1F-11F). Accordingly, the opinion of Dr. Romero is somewhat persuasive.

(R. at 27.)

This discussion shows that the ALJ considered the supportability and consistency factors. The ALJ explained that Dr. Romero's opinions were somewhat supported by and consistent with his own examination findings given that although Dr. Romero found that Plaintiff had a slight reduction in strength and abnormal straight leg raises, his examination findings were otherwise unremarkable. (*Id.*) The ALJ also explained that Dr. Romero's other examination findings, including findings related to Plaintiff's "gait, range of motion, sensation, and manipulative abilities," all supported "an ability to perform at least sedentary work." (*Id.*) Substantial evidence supports these explanations because they accurately describe Dr. Romero's findings. Dr. Romero noted that Plaintiff was able to climb onto the examination table with no difficulties. (*Id*. at 558.) Dr. Romero found that Plaintiff's ranges of motion were all within normal limits. (*Id*. at 560–62.) Dr. Romero further found that Plaintiff had "perfectly normal" gait; grip strength scores of 3 or 4 out of 5; the ability to make a strong fist; the ability to oppose his digits; and no difficulties opening doors or manipulating with his hands. (*Id.* at 558, 562.)

The ALJ also explained that Dr. Romero's opinion was not fully credited because some of Plaintiff's statements to Dr. Romero did not support and were inconsistent with a finding that Plaintiff was unable to perform sedentary work. (*Id*. at 27.) Specifically, the ALJ explained that Plaintiff "acknowledged that he was able to sit for two hours and carry up to 20 pounds, which

8

was consistent with sedentary work." (*Id*.) Substantial evidence also supports this explanation—Dr. Romero wrote that during his examination, Plaintiff indicated that he could sit for about two hours and carry 20 pounds. (*Id*. at 556.)

The ALJ also explained that some of Plaintiff's daily activities were inconsistent with a finding that Plaintiff could not perform at least sedentary work. Again, substantial evidence supports this explanation. As the ALJ accurately noted, Plaintiff reported to another consultative examiner that he was able to drive to appointments, do paperwork, play moderate video games, and shop. (*Id*. at 27, citing to R. 568.)

Plaintiff nevertheless claims that the ALJ failed to "build a logical bridge" to support his determination that Dr. Romero's opinion was only somewhat persuasive. As discussed, however, the ALJ expressly indicated Dr. Romero's opinion was not persuasive because it was not supported by or consistent with Dr. Romero's examination findings, some of Plaintiff's statements to Dr. Romero, and Plaintiff's statements about his daily activities to another medical source. Plaintiff does not challenge any of these record-based reasons the ALJ gave for discounting Dr. Romero's opinion.

Instead, Plaintiff essentially asserts that his subjective symptoms were consistent with Dr. Romero's opinion and that he reported the same symptoms to other providers. (Pl's Statement of Errors 12, ECF No. 10.) But, as explained below, the ALJ concluded that Plaintiff's symptoms were not as severe as alleged. Accordingly, the Court finds that this contention of error lacks merit.

B. The ALJ's Subjective Symptom Assessment

Plaintiff also claims that the ALJ reversibly erred because "the ALJ did not resolve the existence of Plaintiff's symptoms and his ability to sustain work." (Pl's Statement of Errors 12,

9

ECF No. 10.) But the ALJ did, in fact, resolve the existence of Plaintiff's symptoms and his ability to sustain work. He concluded that Plaintiff's symptoms were not as severe as alleged. And Plaintiff's apparent challenge to the ALJ's subjective symptom assessment lacks merit. (Pl.'s Statement of Errors 15–17, ECF No. 10.)

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529(c)(1); SSR 16–3p, 2017 WL 5180304, at*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. § 404.1529(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources including medical opinions. *Id.* In addition, there are seven factors set forth in SSR 16–3p[4] that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of

---

[4] SSR 96-7p, 1996 WL 374186 (July 2, 1996) which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at * 11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit Court of Appeals has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.' " *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16–3p, 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all seven factors he should show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

An ALJ's assessment will not be disturbed "absent compelling reason", *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and such a determination is "virtually unchallengeable," *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation omitted). Accordingly, a reviewing Court is limited to determining whether the ALJ's reasons are supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]."). Nevertheless, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, 2017 WL 5180304 at *10.

The Court finds no error with the ALJ's subjective symptom assessment. The ALJ began by summarizing, in detail, Plaintiff's statements about the disabling effects of his symptoms,

including statements he made in his DIB application and at the 2022 hearing. (R. 22–23.) The ALJ then indicated that although Plaintiff's medically determinable impairments could have reasonably been expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence. (*Id*.) In reaching this conclusion, the ALJ discussed at length Plaintiff's treatment records. (*Id*. at 23–26.)

### 1. Plaintiff's Physical Symptoms

That discussion included many details, including, but not limited to, all the following from treatment records for Plaintiff's physical impairments from 2019 to 2020. During this period, the ALJ noted that Plaintiff received treatment for MS and a vitamin D deficiency, and he endorsed a myriad of symptoms. But even though Plaintiff reported that his symptoms were not well controlled, his provider noted in 2019 that he was clinically and radiologically stable. (*Id*. at 23, citing to R. 296.) A 2019 examination found that Plaintiff had 5/5 strength scores; normal sensation, coordination, and gait; and stable Romberg test results with his eyes open and closed. (*Id*. at 23, citing to R. 302.) Plaintiff was seen by his neurologist, Dr. Moneme in July 2019, due to transient loss of consciousness. (R. 304.) He suspected occipital neuralgia, so he ordered an MRA of Plaintiff's head and neck, which was unremarkable and showed no new or enhancing lesions, and even the possible resolution of one lesion in his right cerebellum. (R 305.) Plaintiff's 2019 EEG, ECG, and electrocardiogram were also all unremarkable. (*Id*. at 23, 312, 425–28.) As noted above, although Dr. Moneme suspected that Plaintiff might have occipital neuralgia in July 2019, he began receiving occipital nerve blocks in 2019. (*Id*. at 24, citing to 315, 319.) And by February 2020, Plaintiff's occipital neuralgia was noted to be resolved with the nerve blocks. (*Id*. at 24, citing to R. 323.) Plaintiff's physical examination at that time was

also unremarkable, and his labs looked "great." (*Id*. at 24, citing to R. 331–34.) A 2020 MRI of Plaintiff's brain showed no new or enhancing lesions and a 2020 MRI of his cervical spine showed a regression in multifocal areas of abnormal signal involving his cervical and thoracic spinal cord, and that he had no spinal cord compression, and no new or enhancing lesions. (*Id*. at 24, citing to R. 342, 346-47.) While seeking a COVID test at an emergency room in Fall 2020, Plaintiff reported that he had felt poorly since March, but his physical examination reflected no abnormalities. (*Id*. at 24, citing to R. 476-80.) After reviewing these details from Plaintiff's 2019 to 2020 treatment records, the ALJ explained that despite Plaintiff's subjective complaints, his minimal treatment and relatively good functioning on examinations did not support symptoms or limits as severe as he alleged. (*Id*. at 24.)

The ALJ also discussed all the following details from Plaintiff's 2021 treatment records for his physical impairments. During this period, Plaintiff sought treatment for urinary issues and again endorsed a myriad of symptoms. But his renal function was normal, and he sought no further urology treatment. (*Id*. at 24, citing to R. 502-06.) In July of that year, Plaintiff broke a bone in his hand after punching a door. (*Id*. at 24, citing to R. 551.) An examination revealed tenderness to palpitation over the fifth metacarpal, but he had a full range of motion except for his small finger, which lacked a few centimeters; he had no edema, erythema, ecchymosis, or obvious deformity; his sensation was intact; and he had normal strength against resistance. (*Id*.) Plaintiff's gait was also normal, and he had appropriate balance. (*Id*.) Plaintiff was offered "conservative" treatment because his fracture was "quite borderline." (*Id*.) Within a week he experienced improvement, including improved range of motion, and he was doing "very well" and "improved significantly" by the end of the month. (*Id*. at 24–25, citing to R. 539-43.) When seen in August 2021 for follow-up, he continued to do "very well," and interval healing was

13

reflected on x-ray results. (*Id*. at 25, citing to R. 534.) Plaintiff returned to his neurologist, Dr. Moneme in October 2021 for relapsing MS after being lost to follow up. (*Id*. at 25, citing to R. 620.) Although Plaintiff reported being limited by pain and gait impairments, he also reported that his medications had helped with symptoms. (*Id*.) Dr. Moneme noted that it had been six months since Plaintiff had received infusions and that they needed to be restarted. (*Id*.) Dr. Moneme also indicated that Plaintiff's occipital neuralgia resolved after nerve blocks. (*Id*.) After reviewing these details from Plaintiff's 2019 to 2020 treatment records, the ALJ explained that despite Plaintiff's subjective complaints, these records combined with Plaintiff's generally unremarkable examinations did not support symptoms or limits as severe as he alleged. (*Id*. at 25.)

The ALJ additionally wrote that Plaintiff reported activities of daily living indicated that the severity of his symptoms was less than alleged. (*Id*. at 25–26.) The ALJ noted that during a consultative psychological examination in November 2021, Plaintiff reported that he was able to take care of himself with respect to basic activities of daily living, shopping, managing money, taking care of pets, driving, and doing paperwork. (*Id*. at 25–26, citing to R. 568.) The ALJ additionally noted that Plaintiff volunteered as a videogame moderator for a gaming server. (*Id*. at 26, citing to R. 568.) As a result of this evidence, the ALJ reasoned that during the relevant period Plaintiff's symptoms were adequately managed and he demonstrated adequate functioning on examinations throughout the record. (*Id*. at 26.)

Plaintiff does not challenge these considerations, or the litany of evidence cited by the ALJ. Instead, he appears to assert that because many of his MS symptoms, including dizziness, cold and heat intolerance, and fatigue, were not clinically measurable, the ALJ erred by considering his generally unremarkable examination results when assessing his subjective

14

symptoms. (Pl.'s Statement of Errors 12–13, ECF No. 10.) But as described above, the ALJ reviewed the record and considered Plaintiff's minimal treatment, daily activities, the efficacy of some of Plaintiff's treatments, *and* Plaintiff's relatively good functioning on exams. These were proper considerations. *See Shelley S. v. Comm'r of Soc. Sec.*, Case No. 22-cv-02516, 2023 WL 6307643, at *5–8 (S.D. Ohio Sept. 28, 2023) (finding no reversible error in subjective symptom assessment where ALJ considered Plaintiff's self-reported MS symptoms and objective medical evidence including examination findings, daily activities, and benefits from medications); *Gasiewski v. Comm'r of Soc. Sec.*, Case No. 4:22-cv-002194, 2023 WL 5673034, at *13–14 (N.D. Ohio Aug. 14, 2023) (N.D. Ohio Aug. 14, 2023) (finding no reversible error in subjective symptom assessment where ALJ considered Plaintiff's subjective MS symptoms and objective medical evidence including largely normal or unremarkable diagnostic tests and examinations, conservative treatment, effectiveness of treatments, and activities of daily living), *aff'd and adopted*, 2023 WL 5671936 (N.D. Ohio Sept. 1, 2023).

Plaintiff further asserts that although the ALJ determined that his symptoms were adequately managed, one of his providers, Dr. Moneme, indicated in 2019 that although he was clinically and radiographically stable, Plaintiff had reported that his symptoms were not well controlled. (Pl.'s Statement of Errors 15, 16, ECF No. 10.) But it is the ALJ's task to weigh competing information. And if the record supports the ALJ's conclusion, it will not be disturbed even if the record could support a different conclusion. *Blakley*, 581 F.3d at 406.

In short, the ALJ conducted a thorough review of the medical record in this case, and provided substantial support for his determination that Plaintiff's physical symptoms were not as disabling as he described. Plaintiff's claim to the contrary lacks merit.

### 2. Plaintiff's Mental Health Symptoms

Plaintiff also appears to challenge the ALJ's assessment of his subjective mental health symptoms. Specifically, Plaintiff posits that his scores on psychological tests were consistent with his subjective reports of concentration and memory symptoms and asserts that the ALJ failed to consider these deficits. (Pl.'s Statement of Errors 16, ECF No. 10.) This assertion lacks merit.

The ALJ explicitly considered Plaintiff's subjective mental health symptoms. The ALJ explained that "[t]he effects of Plaintiff's MS symptoms on his mental functioning were discussed [at step two] with his non-severe mental impairments and do not result in more than mild limitations with no necessary restrictions needed for the [RFC]." (R. 26.) And indeed, at step two, the ALJ expressly considered Plaintiff's ability to understand, remember, or apply information and his ability to concentrate, persist, and maintain pace, and determined that he had only mild impairments in both areas. (*Id*. at 19.) In reaching that conclusion, the ALJ discussed many details, including, but not limited to, all the following.

During his psychological examination, Plaintiff's recall of past experiences and recent events was unremarkable. (*Id*. at 19, citing to R. 569.) His performance was generally appropriate with regard to his memory. (*Id*. at 19, 571.) Although Plaintiff had low scores on some memory tests, his working memory index was in the high average range which demonstrated an ability to hold and process instructions and enough short-term memory to complete tasks. (*Id*. at 19, 570–71.) Plaintiff was able to maintain sufficient concentration to complete his psychological testing. (*Id*. at 28, citing to R. 571.) Plaintiff did not have any attention problems during his testing and did not need to have directions explained or questions repeated, including multi-step directions and questions. (*Id*. at 20, citing to R. 568–69.)

16

Plaintiff's neurology notes consistently reflected that he had normal attention and concentration. (R. 355, 395,615, 627.)   Other treatment (This is ER and primary care physician records) also reflected normal mental status.  (R. at 438, 480, 583, 589, 637.)

The ALJ also explained that Plaintiff's daily activities suggested that he had only mild impairments in these areas. (*Id*. at 19–20.) The ALJ noted that Plaintiff was able to take care of himself with regard to basic activities such as shopping, money management, pet care, driving, and paperwork. (R. at 19–20, citing to R. 45-46, 62, 568.)  Plaintiff also testified to volunteering as a videogame moderator. (R. at 62–63.)

Accordingly, the Court finds that the ALJ conducted a thorough review of the medical record in this case, and provided substantial support for his determination that Plaintiff's mental health symptoms were not as disabling as he described. Plaintiff does not challenge the evidence cited by the ALJ. Accordingly, the Court concludes that Plaintiff's claim lacks merit.

## V.     CONCLUSION

For all the foregoing reasons, Plaintiff's Statement of Errors is **OVERRULED**, and the Commissioner of Social Security's decision is **AFFIRMED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE